IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAVID W. JONES, | : | CIVIL ACTION NO. |
| | : | 1:13-CV-2669-WSD-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF ATLANTA et al., | : | **NON-FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff David W. Jones filed the above-styled civil action on August 12, 2013.

After Defendants filed a Motion to Dismiss for Failure to State a Claim [3], Plaintiff

sought and received the Court's leave to file an Amended Complaint. In his First

Amended Complaint [15], Plaintiff claims, among other things, that his former

employer, Defendant City of Atlanta (the "City"), along with Defendants Yvonne

Cowser Yancy and Kristi Matthews – both employees of the City – discriminated

against him on the basis of his age and race.[1] Specifically, he alleges that Defendants

---

[1] Plaintiff also sues Defendant Mohammed Kasim Reed, the Mayor of the City, in his official capacity. *See* First Amend. Compl. [15] at ¶ 5. In his initial Complaint [1], which was superceded by the First Amended Complaint [15], Plaintiff sues Defendants Yancy and Matthews in their official capacity as well. Compl. [1] at ¶¶ 6-7. Plaintiff and Defendants have conceded to dismiss with prejudice the claims against these Defendants in their official capacity. *See* Consent Motion to Dismiss dated May 22, 2014 [17]. The District Court granted the motion to dismiss all official capacity claims from this lawsuit, and thus, they will not be discussed further. *See* Order dated June 2, 2014.

Yancy and Matthews terminated his employment as a Human Resources Director in Watershed Management with the City because of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment. First Amend. Compl. [15] at ¶¶ 46a, 52b[2].

The action is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [18]. In this Motion, Defendants Yancy and Matthews argue that the claims against them in their individual capacity are barred by qualified immunity, and thus, these claims should be dismissed. *See generally* Motion to Dismiss [18].

For the reasons discussed below, the undersigned **RECOMMENDS** that the Motion to Dismiss Plaintiff's First Amended Complaint [18] be **DENIED**.

Specifically, the Court finds that Plaintiff's First Amended Complaint [15] sufficiently alleges that Defendants, acting within their discretionary authority, violated a clearly established constitutional right, and accordingly, they are not entitled to dismissal on the grounds of qualified immunity at this stage in the litigation.

---

[2] Plaintiff's First Amended Complaint [15] includes two different sets of paragraphs numbered as 45-52. Accordingly, the first set of paragraphs will be denoted as 45a-52a, and the second set will be referred to as 45b-52b.

## I.    BACKGROUND

Plaintiff filed the Complaint [1] in the instant action on August 12, 2013, and all Defendants filed a Motion to Dismiss for Failure to State a Claim on September 25, 2013 [3]. Afterward, Plaintiff filed a Motion to Amend his Complaint [7], which the Court granted. *See* Order dated April 16, 2014. The following allegations are taken from Plaintiff's First Amended Complaint [15]. Plaintiff is a 60-year-old white male citizen of the United States who presently lives in Galesburg, Illinois. First Amend. Compl. [15] at ¶ 3. On or about October 9, 2001, Plaintiff began working for Defendant City as a Labor Relations Specialist in the Department of Human Resources. *Id.* at ¶ 13. Plaintiff was continuously employed by Defendant City for over eleven years. *Id.* at ¶ 14. On October 9, 2001, the Department of Human Resources employed a racially diverse group of individuals, approximately 20% of whom were Caucasian and approximately 80% of whom were African American. *Id.* at ¶ 15. While he worked for Defendant City, Plaintiff was promoted several times to positions of progressive responsibility, and he received "Highly Effective" or "Outstanding" performance ratings in all but one year. *Id.* at ¶¶ 16-17. In this one year, no ratings above "Effective" were allowed, and Plaintiff received an "Effective" rating. *Id.* at ¶ 17. Plaintiff has no record of any disciplinary action during his entire tenure with Defendant City. *Id.* at ¶ 18.

In or about April 2011, Defendant Reed in his capacity as Mayor of the City, appointed Defendant Yancy as Commissioner of the Department of Human Resources. *Id.* at ¶ 19. Shortly thereafter, Defendant Yancy terminated every senior employee over the age of 50. *Id.* at ¶ 20. In January 2012, Defendant City reorganized its reporting structure so that all departmental human resource personnel were reassigned to the Department of Human Resources and reported to the Commissioner of Human Resources. *Id.* at ¶ 31. Thus, Plaintiff was reassigned to the Department of Human Resources and reported to Defendant Yancy, the Commissioner of Human Resources. *Id.* at ¶ 32. At that time, Plaintiff advised Defendant Yancy that the citywide human resources reorganization had misaligned the supervisory reporting structure of the Department of Watershed Management's timekeepers in the electronic human resources information system, thereby jeopardizing audits required by the federal consent decree. *Id.* at ¶ 33. Plaintiff also advised the Department of Watershed Management's Commissioner that Defendant Yancy's publicly stated intention to utilize personnel funded by the city's Water Revenue Fund to provide citywide training could violate the Department's restrictive bond covenants. *Id.* at ¶ 34.

On or about February 13, 2012, Defendant Yancy placed Plaintiff on administrative leave with pay, pending the result of an investigation into anonymous complaints alleging Plaintiff's misconduct. *Id.* at ¶ 35. At Defendant Yancy's

4

direction, Labor Relations Director Defendant Matthews authored and engineered the pretextual investigation regarding the anonymous complaints. *Id.* at ¶¶ 36, 41. On or about February 28, 2012, Plaintiff received a copy of the anonymous complaints, and the next day, he provided a written response to the complaints, in which he denied all the allegations as being factually untrue. *Id.* at ¶ 38. He also identified individuals who could refute the allegations, but Defendant Matthews did not interview these individuals during the investigation. *Id.* at ¶ 41. The interviews that Defendant Matthews conducted consisted of a series of specific questions that were crafted in a way to elicit the response that Plaintiff engaged in offensive behavior and unethical conduct. *Id.* She did not ask questions regarding Plaintiff's overall character or management style. *Id.*

The investigation concluded that Plaintiff disclosed confidential information; however, such is not the case because the salary paid to a public employee is not confidential information. *Id.* at ¶ 42. Moreover, the investigation concluded that Plaintiff engaged in offensive conduct, but this conclusion is also not true. *Id.* at ¶ 43. Plaintiff's employment was terminated because he paraphrased a statement made by an African American department head. *Id.* In his response to the allegations, Plaintiff noted that he was repeating a joke that Corrections Chief Frank Sizer, who is African American, had previously told. *Id.* No attempt was made to determine whether Mr.

5

Sizer had made similar comments, and Mr. Sizer was not disciplined. *Id.* Thus, Plaintiff was treated differently than the African American department head. *Id.* The findings of the investigative report leading to the termination of Plaintiff's employment were a pretext for an illegal discriminatory motive based on race and age. *Id.* at ¶ 47a.

On or about April 11, 2012, Plaintiff submitted a written request to take intermittent leave under the Family Medical Leave Act ("FMLA") for the treatment of a chronic serious health condition. *Id.* at ¶ 39. On or about April 13, 2012, Defendant Yancy informed Plaintiff that his employment would be terminated upon his return from FMLA leave. *Id.* at ¶ 44. Defendant Yancy's actions were taken after consultation with Defendant Matthews. *Id.* This discipline was not in accordance with the City Code's progressive disciplinary policy and did not consider Plaintiff's past performance as required. *Id.* at ¶ 41. Moreover, anonymous complaints have never before been used to terminate a City employee. *Id.*

Plaintiff's predecessor as Human Resources Director in Watershed Management was an African American male who earned more than Plaintiff, and his successor who was appointed to the position immediately upon Plaintiff's termination, was an African American female approximately 11 years younger than Plaintiff who was compensated at almost 1.5 times more than Plaintiff. *Id.* at ¶ 46a.

The restructured Department of Human Resources under Defendant Yancy has increased in size to approximately 100 employees, of whom approximately 5% are Caucasian, and the remaining 95% are African American. *Id.* at ¶ 48a. The City in general and the Department of Human Resources in particular, under the direction of Defendant Yancy, is and has been engaged in a systematic effort to reduce the number of Caucasians working at the City. *Id.* at ¶ 49a. The reduction in the number of Caucasian employees has been accompanied by an increase in the percentage of African American employees at the City. *Id.* Thus, the Department of Human Resources at the City reflects a significant underutilization of a protected class (Caucasian), while favoring another protected class (African American), in violation of public policy, the City Code of Ordinances, and federal law. *Id.* at ¶ 50a. On or about May 9, 2012, Plaintiff was offered and accepted the position of Human Resources and Risk Manager for the City of Galesburg, Illinois. *Id.* at ¶ 51a.

On or about April 18, 2012, Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") in which he alleged age and race discrimination. *Id.* at ¶ 10. Plaintiff exhausted his administrative remedies, and the EEOC issued him a Notice of Right to Sue letter for each charge. *Id.*

Plaintiff has asserted four claims against Defendants. *Id.* at ¶¶ 45b-55b. However, at this time, Defendants Yancy and Matthews only wish to dismiss the

claim against them in their individual capacity, and thus, only this claim will be discussed. In Count III, Plaintiff raised a claim under 42 U.S.C. § 1983, alleging that Defendants violated his right under the Fourteenth Amendment to equal protection of the law. *Id.* at ¶¶ 51b-52b. Plaintiff noted that this claim included the ratification of a subordinate's actions in terminating his employment. *Id.*

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

Defendants Yancy and Matthews have moved to dismiss Plaintiff's claims against them in their individual capacity because, they argue, such claims are barred by qualified immunity.

As an initial matter, Plaintiff argues that, pursuant to FED. R. CIV. P. 12(g)(2), Defendants are not permitted to file a "serial" motion to dismiss. *See* Plaintiff's Brief in Opposition to Defendants Yancy and Matthews' Second Motion to Dismiss [26] at 1. He argues that Defendants filed a Motion to Dismiss in response to his original Complaint, which the Court denied, and thus, Defendants cannot file another such motion. *Id.* However, Plaintiff's contention is incorrect. In the instant case, Plaintiff filed an Amended Complaint, which superseded his original Complaint because he did not specifically refer to or adopt his original Complaint in his Amended Complaint. *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674

F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading."). Thus, the Court denied Defendants' initial Motion to Dismiss as moot. *See* Order dated June 5, 2014. Accordingly, Defendants' instant Motion to Dismiss [18] is properly before the Court at this time.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (*quoting* FED. R. CIV. P. 8(a)(2)) (other citations omitted).

### 1. Count III - 42 U.S.C. § 1983

In Count III, Plaintiff asserts a claim against Defendants under 42 U.S.C. § 1983, alleging that they violated his rights under the Equal Protection Clause of the Fourteenth Amendment when they terminated his employment based on his race. First Amend. Compl. [15] at ¶ 52b. Plaintiff further alleges that Defendant Yancy "is and has been engaged in a systematic effort to reduce the number of Caucasians working at the City of Atlanta," and that Defendant Matthews – acting at Defendant Yancy's direction – "authored and engineered" a "pretextual investigation" into anonymous complaints alleging Plaintiff's misconduct. *Id.* at ¶¶ 35-36.

### a. Legal Standard for Claims under 42 U.S.C. § 1983

The statute provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

> shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To prevail on a claim under 42 U.S.C. § 1983 ("§ 1983"), a plaintiff must establish that: (1) a person deprived him of a right secured under the Constitution or a federal law; and (2) the deprivation occurred under color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). The parties do not dispute that Defendants Yancy and Matthews were state actors and were acting under color of state law for the purposes of Plaintiff's § 1983 claims. *See West v. Atkins*, 487 U.S. 42, 49 (1988) (defining "acting under color of law" as acting with power possessed by virtue of the defendant's employment with the state). Accordingly, the issue that remains is whether Defendants deprived Plaintiff of a right secured under the Constitution or a federal law. *See Arrington*, 139 F.3d at 872.

### b.    Equal Protection

In his First Amended Complaint, Plaintiff alleges that Defendants violated his Equal Protection rights under the Fourteenth Amendment when they terminated his employment based on his race. First Amend. Compl. [15] at ¶ 52b. In support of this allegation, Plaintiff contends that Defendant Yancy "is and has been engaged in a systematic effort to reduce the number of Caucasians working at the City of Atlanta,"

and that "[t]he reduction in Caucasian employees has been accompanied by a corresponding increase in the percentage of African American employees at the City." *Id.* at ¶ 49a. Thus, the Department of Human Resources at the City "reflects a significant underutilization of a protected class (Caucasian) while favoring another protected class (African American)." *Id.* at ¶ 50a. Moreover, he alleges that Defendant Yancy directed Defendant Matthews to conduct a "pretextual investigation" into anonymous complaints pertaining to Plaintiff's alleged misconduct. *Id.* at ¶¶ 35-36. Specifically, the investigation's findings "were a pretext for an illegal discriminatory motive based on race[.]" *Id.* at ¶ 47a. Plaintiff states that his employment was terminated because he repeated a joke he originally heard told by Corrections Chief Frank Sizer, an African American department head. *Id.* at ¶ 43. Plaintiff contends that he was treated differently than Mr. Sizer; whereas Plaintiff's employment was terminated, the City took no disciplinary action against Mr. Sizer. *Id.*

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To establish a violation of the Equal Protection Clause, a "plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). Specifically, a plaintiff must

allege that "he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin." *Alford v. Consol. Gov't of Columbus, Ga.*, 438 F. App'x 837, 839 (11th Cir. 2011) (citing *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006).

Here, Plaintiff explicitly states that Defendants terminated his employment because of his race, and he alleges that Defendants' hiring practices "reflect[] a significant underutilization of a protected class (Caucasian) while favoring another protected class (African American)." *Id.* at ¶ 50a. Moreover, he alleges that he was treated differently than an African American who engaged in the same conduct for which Plaintiff's employment was terminated. *Id.* at ¶ 43. Specifically, Plaintiff contends that the City did not discipline Mr. Sizer for originally telling the joke. *Id.*

c.     Qualified Immunity

Notably, Defendants do not argue that the First Amended Complaint fails to allege sufficient factual matter, under *Iqbal*, 556 U.S. at 678, to allege an Equal Protection claim. Rather, Defendants Yancy and Matthews argue that they are entitled to the defense of qualified immunity, and that Plaintiff's § 1983 claim against them based on an Equal Protection violation must be dismissed.

Public officials are entitled to qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006) (*quoting Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002)). To be eligible for qualified immunity, an official must have been engaged in a discretionary function when he committed the acts of which the plaintiff complains. *Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004). It is the public official's burden to show he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place. *Id.* at 1264. If the defendant can show that he was engaging in a discretionary function, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right; and (2) this right was clearly established at the time of the alleged violation, such that "a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted); *see also Saucier v. Katz*, 533 U.S. 194 (2001).

In this case, it appears to be undisputed that Defendants were acting within the scope of their discretionary authority when they made the decision to terminate Plaintiff's employment. Defendant Yancy argues that it was within her discretionary authority, as the Human Resources Commissioner for the City, to terminate Plaintiff's employment. Defendant Matthews contends that her alleged role in the human

resources investigation into Plaintiff's conduct, and her alleged consultation regarding the termination of Plaintiff's employment is within the scope of her discretionary authority as the Labor Relations Director for the City. *See* Motion to Dismiss [18-1] at 4. In his Response to Defendants' Motion to Dismiss, Plaintiff does not dispute Defendants' assertions that they were acting within their discretionary authority, and accordingly, these statements are deemed unopposed.

Thus, for Plaintiff to overcome Defendants' defense of qualified immunity at this stage in the proceedings, he must allege sufficient facts to establish a plausible claim that Defendants violated a constitutional right, and that the right was clearly established at the time of the violation.

Here, the First Amended Complaint sufficiently alleges a claim of discriminatory discharge. The First Amended Complaint expressly alleges that Defendants Yancy and Matthews terminated Plaintiff because of his race. Moreover, the First Amended Complaint alleges some facts, including that Defendant Yancy has engaged in a pattern of discriminatory hiring against Caucasians, that Defendant Matthews's conduct from the investigation into Plaintiff's alleged misconduct suggested that it was a mere pretext for a termination decision already made, and that an African American colleague was not punished for the same misconduct that Plaintiff engaged in. At this point in the case, at which the Court must accept all

factual allegations as true and draw all reasonable inferences in Plaintiff's favor, this suffices to allege an Equal Protection violation. All that remains is whether this right was clearly established at the time of the violation.

In 2002, the Supreme Court held in *Hope*, 536 U.S. at 730, 739 (2002), that the Eleventh Circuit's view of qualified immunity was too stringent for plaintiffs, and that it allowed too many public officials to escape liability for constitutional violations when they had "fair warning" that their actions were unlawful in light of established law:

> As we have explained, qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent . . . .

> In *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), we held that the defendant was entitled to 'fair warning' that his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was 'clearly established' in civil litigation under § 1983.

*Hope*, 536 U.S. at 739-40 (internal quotations and citations omitted).

Thus, to determine whether Defendants Yancy and Matthews are entitled to qualified immunity, the Court must determine whether, given the established law at

the time of Plaintiff's termination, Defendants had "fair warning" that their actions were in violation of Plaintiff's Equal Protection rights. As *Hope* made clear, "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope*, 536 U.S. at 739-40 (internal quotes omitted).

At the time that Plaintiff's employment was terminated in 2012, there is no doubt that the law was clearly established that a public employer who discriminates against an employee on the basis of race violates the Equal Protection rights of the employee. *See Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995) ("It can hardly be argued that . . . intentional race discrimination in the workplace [does] not violate the Fourteenth Amendment.") (quoting *Yeldell v. Cooper Green Hospital, Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992)); *see also Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Fourteenth Amendment's Equal Protection Clause is the prevention of official conduct discriminating on the basis of race."). Thus, at the time that Defendants terminated Plaintiff's employment, a reasonable official would have known that the Equal Protection Clause prohibited race discrimination in the public workplace.

Defendants argue that even if they acted in part with discriminatory intent, they are nonetheless entitled to dismissal as a matter of law because they acted "'objectively reasonabl[y]' based on valid and lawful reasons." Def. Motion [18-1] at 4-5. Defendants cite *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1283 (11th Cir. 2008) for the proposition that "when an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field . . . ." *See also Johnson v. City of Ft. Lauderdale, Fla.*, 126 F.3d 1372, 1379 (11th Cir. 1997) ("Even assuming that the defendants acted with some discriminatory or retaliatory motives in demoting and discharging [plaintiff], the law did not clearly establish that a reasonable official faced with the same evidence of disobedience and deception should not have disciplined [plaintiff] in the same manner.").

In *Rioux*, for example, the Eleventh Circuit concluded based on the factual record in that case, that despite some evidence of a subjective discriminatory motive, "Chadwick [the supervisor who took the adverse action] was motivated, at least in part, by the lawful considerations of the disciplinary incidents," which were "objectively valid reasons . . . for the step Chadwick took." 520 F.3d at 1284. Defendants argue that the same applies here, where "Plaintiff readily concedes that he was the subject of multiple complaints alleging misconduct," and that Plaintiff "unequivocally admits to making the offensive statement that was the basis of the

18

anonymous complaints against him and the subject of the internal investigation." Def. Mot. [18-1] at 5-6.

Defendants' reliance on *Rioux* and *Johnson* is unhelpful, however, for the simple reason that those decisions arose in the very different context of post-discovery motions for summary judgment, not a motion to dismiss a complaint. The courts in those cases had the benefit of a factual record including evidence detailing the disciplinary decisions that were made. The Court here is faced with a much different standard, which is whether it is plausible that Plaintiff could prove a violation, assuming all factual allegations to be true and drawing all reasonable inferences in his favor. At this stage in the case, based only on the allegations in the First Amended Complaint, which are not required to be pleaded with particularity, and applying this deferential standard, the Court cannot recommend dismissal on grounds of qualified immunity.

Defendants assert that "Plaintiff readily concedes that he was the subject of multiple complaints alleging misconduct. Ultimately, the Department concluded that Plaintiff was guilty of making offensive and degrading comments and breaching confidentiality in violation of the City of Atlanta's personnel policies and expectations." Def. Mot. at 5-6 (internal citation omitted). This is not a fair or complete characterization of the pertinent allegations. While Plaintiff stated that the

investigation's "conclusion" was that he "disclosed confidential information," ¶ 42, the First Amended Complaint does not allege that this was "in violation of the City of Atlanta's personnel policies." The First Amended Complaint does not even explain specifically what the nature of the "disclos[ure]" was, although presumably, at least one issue is related to disclosing salary information because the First Amended Complaint alleges that "[t]he salary paid to a public employee is not confidential information." First Amend. Compl. [15] at ¶ 42. In any event, Plaintiff further alleges that the finding against him was "fabricated," and he alleges facts from which he could argue that the investigation was orchestrated to fabricate a finding against him. He alleges that Defendant Matthews chose not to interview Plaintiff's exculpatory witnesses, and in conducting other interviews, asked questions designed to elicit specific inculpatory responses.

As to the investigative conclusion that Plaintiff engaged in "offensive comments," Plaintiff also alleges that this was "fabricated" and the result of an orchestrated investigation. Also, there are no details alleged about the comments that were supposedly made and what specifically Plaintiff said. The allegation simply states that Plaintiff "was simply repeating a joke he had originally heard told by Corrections Chief Frank Sizer, an African American department head." First Amend. Compl. [15] at ¶ 43.

Finally, Plaintiff alleges that all of this was pretext, because an employee outside his protected class who made the same unspecified comment (Sizer) was not disciplined. Plaintiff also alleges that the discipline he received as a result of these findings violated the City's progressive disciplinary policy, and contradicted the City's general practices by which no employee had ever previously been terminated on the basis of anonymous complaints. First Amend. Compl. [15] at ¶ 41. These and other facts, which the Court must accept as true, could support an argument that Plaintiff's termination was not objectively reasonable.

Defendants may very well be entitled to avail themselves of the defense of qualified immunity. But that fact-intensive finding as to whether it was objectively reasonable to terminate Plaintiff despite discriminatory animus needs to be made in light of the factual details to be adduced in discovery. Plaintiff has alleged enough to support a plausible argument that he can overcome the qualified immunity defense.

The undersigned finds, therefore, that Defendants Yancy and Matthews, in their individual capacities, are not entitled to qualified immunity. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [18] filed by Defendants Yancy and Matthews be **DENIED**.

21

### III.   CONCLUSION AND RECOMMENDATION

For the above reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [18] be **DENIED**.

**IT IS SO RECOMMENDED** this 26th day of November, 2014.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE