IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID W. JONES,

                          Plaintiff,

        v.                                          1:13-cv-2669-WSD

CITY OF ATLANTA, et al.,

                          Defendants.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Justin S. Anand's Final

Report and Recommendation ("R&R") [55], recommending that Defendants Kristi

Matthews ("Matthews"), Yvonne Cowser Yancy ("Yancy"), and City of Atlanta's

(the "City") (together, "Defendants") Motion for Summary Judgment [43] be

granted.

## I.    BACKGROUND[1]

On August 12, 2013, Plaintiff David W. Jones ("Plaintiff") filed his

Complaint [1] against the City, Yancy, the Commissioner of the Department of

---

[1]     The facts are taken from the R&R and the record.  The Court finds no plain
error in the facts.  No party has objected to the facts determined in the R&R, and
the Court adopts them.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir.
1993).

Human Resources for Atlanta, Matthews, the Labor Relations Director for Atlanta, and Mohammed Kasim Reed, the Mayor of Atlanta,[2] asserting claims of racial and age discrimination.  On April 16, 2014, Plaintiff filed his Amended Complaint [15].

Plaintiff, in his Amended Complaint, alleges that his former employer, the City, and the City's employees named as Defendants, terminated his employment because of his race—in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, *et seq.*, the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1983—and because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.  The R&R states the relevant facts of this case, as modified herein, as follows:

Plaintiff was employed with the City as a Labor Relations Specialist, Diversity Analyst, Human Resources Generalist, Human Resources Administrator, Human Resources Director of Public Works, and Human Resources Director of Watershed Management from October 8, 2001 until his resignation on May 23, 2012.  (Defendants' Statement of Material Facts [43.2] ("DSOMF")

---

[2]     Mayor Reed has been dismissed as a Defendant.  (Consent Mot. to Dismiss [17]).

2

¶¶ 1-2, 12; Plaintiff's Statement of Material Facts [47.4] ("PSOMF") ¶ 1-29[3]).

During his employment, Plaintiff's conduct was bound by the City of Atlanta Code

of Ordinances ("the Code"), the City of Atlanta Employee Handbook ("the

Handbook"), and other agreements that Plaintiff executed.  (DSOMF ¶ 3; PSOMF

¶ 1-29).  The Code prohibits employees from disclosing confidential information

"concerning the property, governing operations, policies or affairs of the city" and

from using "such confidential information acquired in an official capacity to

advance the financial interest or personal interest of the official, employee, or

others."  (DSOMF ¶ 4; PSOMF ¶ 1-29).  The Code defines confidential

information as "information which has been obtained in the course of holding

public office, employment, an independent contract or otherwise acting as an

official or employee, and which information is not available to members of the

public under state law or other law or regulation and which the official employee is

not authorized to disclose."  (DSOMF ¶ 5; PSOMF ¶ 1-29).  On

December 17, 2003, Plaintiff also agreed to comply with the confidentiality

---

[3]       Plaintiff has labeled a single paragraph as "1-29" in which he admits
paragraphs 1-29 of the DSOMF.  (PSOMF ¶ 1-29).  Throughout the PSOMF,
Plaintiff has made blanket admissions under single headings, and for ease of
reference, Plaintiff's headings will be cited accordingly.

protocol set forth in the Department of Human Resources' Ethical Behavior

Confidentiality Memo ("the Memo"), which states, in relevant part:

> [The Department of Human Resources] deals with an enormous
> amount of confidential information.  It is the City's Policy to maintain
> strict confidentiality in the way we handle this information.  Personal
> employee data, employee medical information, employee issues,
> department budget information, and organizational plans are only a
> few of the many kinds of information to which we are privy.  It is
> critical that this information is only shared with those whose business
> it is to know, and that no information is shared prior to its official
> release, or as provided under the Open Records requirements.

(DSOMF ¶¶ 6-7; PSOMF ¶ 1-29).  Plaintiff acknowledged that "failure to comply

[with the provisions of the Memo] may result in disciplinary actions, up to and

including termination."  (DSOMF ¶ 9; PSOMF ¶ 1-29).  The Open Records Act

allows people to access public records upon a written or oral request to the lawful

custodian of the requested records, unless this information is exempt from the Act.

(DSOMF ¶ 8; PSOMF ¶ 1-29).  Plaintiff reaffirmed his commitment to

maintaining confidential information through the City of Atlanta Employee Ethics

Pledge that he executed on March 25, 2010, in which he agreed that he would not

"disclose any confidential information that [he] learned in [his] capacity as a city

employee."  (DSOMF ¶ 10; PSOMF ¶ 1-29).

Plaintiff was familiar with the City's Equal Employment Opportunity

Commission ("EEOC") policy and was, as a member of the Office of Diversity

4

Management team, involved in ensuring compliance with this policy.  (DSOMF ¶¶ 14-18; PSOMF ¶ 1-29).  He also provided training, as a Diversity Analyst, to prevent sexual harassment.  (Id.).  Plaintiff conducted anti-harassment and anti-discrimination trainings from 2003 until 2012.  (DSOMF ¶ 20; PSOMF ¶ 1-29).  His "Sexual Harassment and Prevention Refresher Training" included examples of prohibited harassing conduct, such as unwanted sexual advances, verbal abuse of a sexual nature, graphic verbal commentary, suggestive comments, and the repetition of inappropriate jokes.  (DSOMF ¶ 24; PSOMF ¶ 1-29).  Plaintiff noted in his presentation that "all City employees are encouraged to report incidents of harassment," and that "managerial and supervisory personnel . . . are *required* to take appropriate prompt action in response" to any information of potential harassment; otherwise, they could face disciplinary action, up to and including termination.  (DSOMF ¶¶ 25-26; PSOMF ¶ 1-29).  In his various positions with the City as a human resources professional, Plaintiff processed and investigated EEOC complaints and provided sexual harassment and discrimination prevention training.  (DSOMF ¶ 36; PSOMF ¶ 32-24[4]).

---

[4]      Plaintiff identified this heading as 32-24, though it should presumably state 32-44.

On April 25, 2011, Defendant Yancy was appointed as Commissioner of
Human Resources for the City.  (DSOMF ¶ 37; PSOMF ¶ 32-24).  The Department
of Human Resources currently employs approximately 121 people, 85 of whom are
over 40 years old and 55 of whom are over 50 years old.  (DSOMF ¶¶ 60-62;
PSOMF ¶ 60-63).  Since 2011, approximately 73 employees have been terminated
or dismissed or have chosen to resign or retire.  (DSOMF ¶ 63; PSOMF ¶ 60-63).
During the period from May 2011 to November 2014, more African Americans
separated from employment that did white employees.  (DSOMF ¶ 63).  At the
time of Defendant Yancy's appointment, the City's human resources functions
were decentralized and individually supervised and managed through the
corresponding departments.  (DSOMF ¶ 39; PSOMF ¶ 32-24).  However, in
January 2012, the City's human resources functions became centralized, pursuant
to the City's Chief Operation Officer and the passing of corresponding legislation,
and thus, Defendant Yancy supervised all the individual department heads,
including Plaintiff.  (DSOMF ¶¶ 40, 42-43; PSOMF ¶ 32-24).

Defendant Yancy sought to form a partnership with the law department to
ensure legal oversight and to encourage the inclusion and involvement of the legal
department in employment matters, employee relations, and labor matters.
(DSOMF ¶ 46; PSOMF ¶ 46-55).  As a result, the City created a new Director of

Labor and Employee Relations position, to centralize employee relations using appropriate legal guidelines. (DSOMF ¶ 47; PSOMF ¶ 46-55). This restructuring allowed the Department of Human Resources to create consistency and ensure legal compliance in the investigation of complaints, provide formalized training to employees processing and investigating complaints, manage the process for ethics complaints, and unify the processes and protocols for employee relations issues. (DSOMF ¶ 52; PSOMF ¶ 46-55).

Defendant Yancy hired Defendant Matthews—an attorney working within the City's employment law group—to serve as the Director of Labor and Employee Relations. (DSOMF ¶ 49; PSOMF ¶ 46-55). Defendant Matthews drafted Title VII policies, conducted administrative investigations, drafted and prepared EEOC responses, drafted and prepared position statements, managed the EEOC and Labor and Employee Relations Office, and acted as the point person for the City's civil service board hearings. (DSOMF ¶ 50; PSOMF ¶ 46-55). Defendant Matthews spent approximately 50% of her tenure investigating employee conduct. (DSOMF ¶ 51; PSOMF ¶ 46-55). To resolve the disparate investigation methods in employee relations, Defendant Matthews composed a training module to provide guidance for the completion of thorough and impartial

investigations pursuant to the guidelines set forth in the City's Administrative Investigation Manual.  (DSOMF ¶ 53; PSOMF ¶ 46-55).

The Department of Human Resources allows employees to file anonymous complaints because "it allows individuals who may be scared to come forward, scared for their jobs, scared of retaliation . . . [a]nd it gives them the ability to present factual allegations" for investigation.  (DSOMF ¶ 68; PSOMF ¶ 68-76). The City receives five to six anonymous complaints each month.  (DSOMF ¶ 69; PSOMF ¶ 68-76).

On November 4, 2011, the Ethics and Compliance hotline received a complaint that Plaintiff made, in the presence of several colleagues, racist and discriminatory remarks regarding the work ethic of African Americans.  (DSOMF ¶ 71; PSOMF ¶ 68-76).  An informal investigation, with Defendant Matthews's consultation, concluded that evidence did not substantiate the allegations in this complaint, and Plaintiff was not subject to disciplinary action.  (DSOMF ¶ 72; PSOMF ¶ 68-76).  The Department of Human Resources received many complaints about Plaintiff's unprofessional management style, and on January 16, 2012, the Department received an anonymous complaint alleging that Plaintiff routinely made offensive and degrading comments about other employees, disclosed confidential employee information, and falsified employment documents.

(DSOMF ¶¶ 65-66; PSOMF ¶¶ 65-66, 68-76).  Defendant Matthews led the

Department of Human Resources' investigation into these allegations, and on

February 13, 2012, Plaintiff was placed on administrative leave with pay pending

resolution of the formal investigation.  (DSOMF ¶¶ 74-76; PSOMF ¶ 68-76).

Defendant Yancy—Plaintiff's direct supervisor—did not participate in the

investigation, to avoid any real or perceived conflicts of interest.  (DSOMF ¶ 78;

PSOMF ¶ 68-76).  On February 29, 2012, Plaintiff responded to the investigation

allegations.  (DSOMF ¶ 81; PSOMF ¶¶ 77-79, 81-82).  Plaintiff, with counsel

present, was interviewed regarding the allegations.  (DSOMF ¶ 82; PSOMF

¶ 81-82).

      During the investigation, Plaintiff admitted that he discussed the salary of an

employee with another employee, but disputes that employee salary information is

confidential.  (DSOMF ¶ 85; PSOMF ¶ 85-88).  Defendants state, and Plaintiff

does not dispute, that he revealed other confidential employee information such as

employee classification and employee circumstances in violation of the Code,

Plaintiff's Ethics Pledge, and his Ethical Behavior and Confidentiality Agreement.

(DSOMF ¶ 85; PSOMF ¶ 85-88).  At least three witnesses corroborated that

Plaintiff had made these employee information disclosures.  (DSOMF ¶ 86;

PSOMF ¶ 85-88).  The Parties agree that Plaintiff's disclosures were not made

under the state's Open Records Act.  (DSOMF ¶ 87; PSOMF ¶ 85-88).  One employee with whom Plaintiff shared employee information testified that she felt she "didn't need to know [the information disclosed to her], especially since it was regarding [her] supervisor's pay."  (DSOMF ¶ 88; PSOMF ¶ 85-88).

Plaintiff also admitted that on multiple occasions he made in the presence of African-American female City employees, jokes in which he analogized Black women to coffee.  (DSOMF ¶¶ 89, 91, 105-106; PSOMF ¶ 89-91).  Plaintiff stated that he "prefer[ed] [his] coffee black like [his] women, black and bitter" (the "Coffee Comment").  (DSOMF ¶ 90; PSOMF ¶ 89-91).  Five female witnesses testified that they overheard this comment, and three of Plaintiff's subordinates testified that the Coffee Comment was derogatory, offensive, inappropriate, and unappreciated.  (DSOMF ¶¶ 92-93; PSOMF ¶ 92-96).  Plaintiff did not apologize or express any remorse regarding the comments he made.  (DSOMF ¶ 94; PSOMF ¶ 92-96).  Instead, Plaintiff testified that a reasonable person should not and would not be offended by his repeated reference to African-American women as black and bitter.  (DSOMF ¶ 95; PSOMF ¶ 92-96).  Plaintiff believes that anyone who found the Coffee Comment offensive is unreasonable, and he defends his joke because he has an "odd sense of humor."  (DSOMF ¶¶ 95-96; PSOMF ¶ 92-96).  After reading the Investigative Report, Plaintiff learned that Judy Weston and

10

Sonya Robinson found his comment to be offensive, but he believed that they are individually and collectively unreasonable and "have issues." (DSOMF ¶¶ 97, 111; PSOMF ¶¶ 97, 98-115). Plaintiff states that analogizing African-American women to coffee is "obviously meant to be a joke," and he does not consider the "black and bitter" comment racially or sexually offensive. (DSOMF ¶¶ 98-99; PSOMF ¶ 98-115).

Plaintiff alleges that he originally heard the Coffee Comment in 2008 from Frank Sizer, an African-American former City Corrections Chief. (DSOMF ¶¶ 100-01; PSOMF ¶ 98-115). Plaintiff claims that Mr. Sizer stated—in the presence of Plaintiff and Jeremy Soloman, the former Assistant Commissioner of Human Resources—that he liked his women like he liked his coffee, black and bitter. (DSOMF ¶ 101; PSOMF ¶ 98-115). Plaintiff did not question Mr. Sizer about the meaning of his comment. (DSOMF ¶ 102; PSOMF ¶ 98-115). Despite their roles as human resources professionals, neither Plaintiff nor Mr. Soloman reported Mr. Sizer's black and bitter reference to women. (DSOMF ¶ 103; PSOMF ¶ 98-115). Instead, Plaintiff recalls that everyone laughed when the comment was made. (DSOMF ¶ 103; PSOMF ¶ 98-115). Mr. Sizer retired from the City on December 23, 2009, and Plaintiff made his black and bitter comments in December 2011, years after Mr. Sizer retired.

Plaintiff insists that his audience recognized that his Coffee Comment was a joke because they laughed when he made it, and no one stated they were offended. (DSOMF ¶ 108; PSOMF ¶ 98-115).  He concedes that fear of termination could prevent an employee from complaining about a supervisor's misconduct, and that, as a human resources director and investigator, he knew employees would laugh at a comment even if offended.  (DSOMF ¶ 109; PSOMF ¶ 98-115).

Based on the documentary and testimonial evidence gathered in the investigation, Defendants concluded that: (1) Plaintiff made offensive and degrading comments inconsistent with the City's personnel policies and expectations; (2) Plaintiff breached his obligation to maintain information as confidential and did so in his position as Human Resources Director of Watershed Management; but (3) Plaintiff did not engage in unethical conduct regarding concerns of falsification or changes to personnel documentation.  (DSOMF ¶ 83; PSOMF ¶ 83).  Defendant Matthews submitted the final investigative report on March 13, 2012, recommending that Plaintiff "(1) should receive the appropriate discipline pursuant to City policies, (2) all human resources personnel should receive sensitivity and diversity training, and (3) all human resources personnel should receive confidentiality training on an annual basis."  (DSOMF ¶¶ 112-13; PSOMF ¶ 98-115).  Based on the investigative findings and recommendations,

Defendants Yancy and Matthews, Bob Godfrey, the City's Chief Employment Counsel, and the City's Chief Operating Officer, decided to terminate Plaintiff's employment with the City. (DSOMF ¶ 115; PSOMF ¶ 98-115). Plaintiff was terminated for using offensive language and for breaching the City's confidentiality requirements. (DSOMF ¶ 116; PSOMF ¶ 116).

On March 28, 2012, Defendant Matthews scheduled a meeting with Plaintiff to discuss the investigation's outcome and the City's decision to terminate his employment. (DSOMF ¶¶ 117-18; PSOMF ¶ 117-25). Plaintiff postponed the meeting so that his counsel could attend. On April 11, 2012, Plaintiff requested extended medical treatment leave under the Family Medical Leave Act. (DSOMF ¶ 119; PSOMF ¶ 117-25). Defendant Yancy approved the request on April 13, 2012, and advised Plaintiff that his termination would not be effective until the end of the leave he requested. (DSOMF ¶ 120; PSOMF ¶ 117-25). On May 16, 2012, before the effective termination date, Plaintiff informed Defendant Yancy that he was retiring from the City effective May 23, 2012. (DSOMF ¶ 121; PSOMF ¶ 117-25). Plaintiff alleges he was forced to retire and take an early distribution of his pension, although he acknowledges that he could have begun his pension at a later date. (DSOMF ¶ 122; PSOMF ¶ 117-25). On September 27, 2012, Sherri Dickerson accepted a voluntary demotion to serve as

13

Plaintiff's replacement.  (DSOMF ¶ 129; PSOMF ¶ 129-139).  Ms. Dickerson is a 51-year-old African-American female, originally hired by the City in March 1994. (DSOMF ¶ 130; PSOMF ¶ 129-139).

Plaintiff does not believe his termination was based on the investigation's outcome, arguing that his disclosure of confidential information and his repetition of a sexually, racially charged joke are not sufficient cause to terminate his at-will employment with the City.  (DSOMF ¶ 125; PSOMF ¶ 117-25).  After Plaintiff's resignation, the City has terminated an African-American female employee for her racially insensitive conduct, despite the terminated employee's contention that her comment should have been considered a joke.  (DSOMF ¶ 127; PSOMF ¶ 127-28). The City also terminated a maintenance worker for making racially inappropriate remarks.  (DSOMF ¶ 128; PSOMF ¶ 127-28).

On November 19, 2014, Defendants filed their Motion for Summary Judgment.  On June 29, 2015, the Magistrate Judge issued his R&R, recommending that Defendants' summary judgment motion be granted.  The Magistrate Judge recommended granting summary judgment on Plaintiff's race-based discrimination claims based on Plaintiff's lack of comparator evidence to establish a prima facie case of discrimination.  (R&R at 23-24).  The Magistrate found that Plaintiff's "convincing mosaic" framework argument consisted only of

14

the evidence Plaintiff offered to support his "speculation, unsupported assertions, and second-guessing of business decisions."  (R&R at 32).  The Magistrate recommended granting summary judgment on Plaintiff's age-based discrimination claim, finding that Plaintiff failed to present evidence to rebut legitimate, non-discriminatory reasons for terminating Plaintiff's employment.  (R&R at 35).

On July 13, 2015, Plaintiff filed his Objections to the R&R [57].  Plaintiff asserts the following objections: (1) a "blanket" objection to all of the findings in the R&R as erroneous (Obj. at 2, 10); (2) a specific objection to the sufficiency of Plaintiff's pretext allegations regarding procedural deficiencies in the City's investigation into his misconduct (id. at 2-9); (3) a general objection to the fairness of the Magistrate Judge's R&R (id. at 6, 9); and (4) a specific objection to the finding that the City employees' salary information is confidential (id. at 9-10).

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   *Standard of Review for R&Rs*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge

"shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  If no party has objected to the report and recommendation, a court conducts only a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).  "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

2.    *Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

16

The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.

2002) (internal quotations omitted).

B.    Plaintiff's Objections to the R&R

The Court first addresses Plaintiff's objections to the R&R.  Plaintiff's objections are haphazard and he largely rehashes arguments he made in response to Defendants' summary judgment motion.  Plaintiff appears to assert the following objections: (1) blanket objections to all of the findings in the R&R as erroneous (Obj. at 2, 10); (2) a specific objection to the R&R's findings regarding Plaintiff's allegations of procedural deficiencies in the City's investigation into his misconduct (id. at 2-9); (3) vague objections to the Magistrate Judge's purported bias (id. at 6, 9); and (4) a specific objection regarding the confidentiality of City employee salary information (id. at 9-10).

Plaintiff's blanket objections to the R&R include that he "respectfully disagrees with the magistrate's conclusions throughout the R&R," (id. at 2), and that "all other findings by the magistrate including those made with regard to age and qualified immunity [are] predicated on the R&R's incorrect assessment of the evidence," (id. at 10).  Plaintiff's complaints of bias include his questioning whether "the magistrate [can] be fair to the Plaintiff when it employs such a moral tone."  (id. at 6).  These are not valid objections and the Court will not consider them.  See Marsden, 847 F.2d at 1548 ("Parties filing objections to a magistrate's

report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court.").  The Court will conduct its *de novo* review of only those portions of the R&R to which there is a specific objection.  The Court addresses Plaintiff's appropriate objections below.

    C.    <u>Plaintiff's Race-Based Discrimination Claims</u>

        1.    *Legal Standard for Claims of Racial Discrimination*

Plaintiff alleges that Defendants terminated his employment with the City based on his race, in violation of Title VII, the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  (<u>See</u> Am. Compl. ¶¶ 45-52).  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff's Section 1981 and 1983 claims are analyzed under the same framework as his Title VII claim.  <u>See</u> <u>Rioux v. City of Atl.</u>, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008).

Claims of racial discrimination relying on circumstantial evidence are evaluated using the burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Maddox-Jones v. Bd. of Regents of Univ.</u>

Sys. Of Ga., 448 F. App'x 17, 19 (11th Cir. 2011) (per curiam).  Under the

McDonnell Douglas analytical framework, a plaintiff establishes a prima facie case

of disparate treatment by showing that (1) he is a member of a protected class;[5]

(2) he was qualified for the job; (3) he suffered an adverse employment action; and

(4) his employer more favorably treated similarly situated employees outside the

protected class.  Id. at 20.

The second step of the McDonnell Douglas analysis requires defendants to

produce a legitimate, nondiscriminatory reason for the alleged disparate treatment.

This burden is "exceedingly light."  Turnes v. AmSouth Bank, NA, 36 F.3d 1057,

1061 (11th Cir. 1994) (quotations omitted).  Where a prima facie case is rebutted,

plaintiffs have the opportunity to show that defendants' stated reasons are pretexts

for discrimination.  Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308

(11th Cir. 2012).  Plaintiffs must show "such weaknesses, implausibilities,

inconsistencies, or contradictions in the employer's proffered legitimate reasons

for its action that a reasonable factfinder could find them unworthy of credence."

---

[5]      It is well established that individuals of any race may pursue claims of
employment discrimination under Title VII.  See Wright v. Southland Corp., 187
F.3d 1287, 1290 n.3 (11th Cir. 1999) (citing McDonald v. Santa Fe Trail Transp.
Co., 427 U.S. 273, 278-80 (1976)).  Thus, the key element of the prima facie case
is establishing that persons outside of the plaintiff's protected classification (that is,
those of a different race) were treated more favorably by the employer.  Id. at 1290
n.3.

Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1528 (11th Cir.

1997) (quotations omitted).

A plaintiff is entitled to survive a defendant's motion for summary judgment

if there is sufficient evidence to demonstrate the existence of a genuine issue of

material fact regarding the truth of the employer's proffered reasons for its actions.

Combs, 106 F.3d at 1529.  A plaintiff may also avoid summary judgment by

presenting "a convincing mosaic of circumstantial evidence that would allow a jury

to infer intentional discrimination by the decisionmaker."  Smith

v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).

> 2.    *Comparator Evidence*

The Magistrate Judge found that Plaintiff is a member of a protected class as

a Caucasian male, and was qualified for his job with the City.  (R&R at 23.)  He

also found that Plaintiff was subjected to an adverse employment action.  (Id.)  The

Parties do not object to these findings, and the Court finds no plain error in them.

The remaining element of the prima facie case under the McDonnell Douglas

framework is whether the City treated similarly situated employees outside

Plaintiff's protected class (that is, those of a different race) more favorably than it

treated him.  See Maddox-Jones, 448 F. App'x at 20 (citation omitted).

Plaintiff argues that the City treated Frank Sizer, an African-American employee who was allegedly similarly situated to Plaintiff, more favorably than it treated him. (Pl.'s Resp. [47] at 6-7.) Plaintiff alleges that he first heard a version of the Coffee Comment from Mr. Sizer in 2008, (see DSOMF ¶ 101; PSOMF ¶ 98-115), and that the City did not take any disciplinary action against Mr. Sizer, (Pl.'s Resp. at 6-7).

The Magistrate Judge found that the comments made by Mr. Sizer and Plaintiff, and the circumstances surrounding them, are not comparable, including because no one filed a complaint against Mr. Sizer, and "there was no proof that the City's Department of Human Resources [ever] learned of Mr. Sizer's [black and bitter] comment." (R&R at 24.) In addition, "at the time that Mr. Sizer allegedly made the comment, Defendant Yancy was not the head of Human Resources, so even if there was a decision not to discipline Mr. Sizer in 2008, such a decision is irrelevant to Yancy's and Matthews's intent with regard to Plaintiff." (Id.). The Magistrate concluded that Sizer is not a proper comparator, and, in the absence of any comparative evidence, Plaintiff failed to establish a prima facie case under the McDonnell Douglas framework. (See id. at 24-25); see also Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) ("[W]e require that the quantity and quality of the comparator's misconduct be nearly

identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges.") (quotations omitted).  Plaintiff does not specifically object to these findings and conclusion, and the Court finds no plain error in them.

### 3.   *Convincing Mosaic of Discrimination*

Lacking comparative evidence, Plaintiff seeks to avoid summary judgment under the "convincing mosaic" analysis outlined by the Eleventh Circuit in Smith v. Lockheed-Martin. [6]  Plaintiff questions the legitimacy of the investigation into his misconduct, and contends that the deficiencies in the investigation indicate a pretext for his termination.  (Pl.'s Resp. at 14-16).  Plaintiff also argues that his Coffee Comment was not racially derogatory and was an invalid basis for his

---

[6]    Plaintiff relies on the same evidence and arguments to demonstrate a prima facie case, to show pretext, and to show a convincing mosaic of evidence of discrimination.  Because the Court has determined Plaintiff has failed to make out a prima facie case of discrimination under the McDonnell Douglas framework, the Court considers the remainder of Plaintiff's arguments under the convincing mosaic framework.  Many of Plaintiff's arguments address whether Defendants' stated reasons for terminating Plaintiff are pretextual.  The Court notes that arguments of pretext are ordinarily analyzed in the third phase of the McDonnell Douglas analysis, but the Court nonetheless addresses Plaintiff's pretext arguments below to determine whether Plaintiff has presented "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  Smith, 644 F.3d at 1328.

termination, pointing out that Defendant Matthews testified that Plaintiff's Coffee Comment merely *could* be offensive.  (Id. at 8-9).[7]

The Magistrate discredited Plaintiff's complaints about the fairness of the investigation, as a proper basis to support his pretext argument, because "[w]hether Defendant Matthews was an effective or fair investigator . . . does not, in itself, prove racial bias," and Plaintiff lacks any evidence "pointing to racial bias."  (R&R at 30).  The Magistrate found Plaintiff's argument that no reasonable person could see anything racially insensitive or offensive in Plaintiff's Coffee Comment to be "simply frivolous."  (Id. at 27-28).  The Magistrate Judge concluded that the evidence does not permit an inference of discrimination, and would not engage in the sort of "second-guessing of business decision" suggested by Plaintiff.  (R&R at 27 (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that reexamines an

---

[7]     Plaintiff further argues that "prior to [Plaintiff's] firing, defendant Yancy had gone about firing white persons and older persons of all colors.  Her actions had made the human resources department consistently more African-American and younger during her tenure."  (Pl.'s Resp. at 17).  The Magistrate Judge found that, while statistical evidence can support an inference of discrimination, "Plaintiff does not make an attempt to present anything that a factfinder could properly rely upon here."  (R&R at 30).  Plaintiff's statistical evidence, in fact, showed that, "while African Americans comprise the majority of the Department, they also terminated employment with the Department at a far greater rate than White workers."  (Id. at 30-31).  Plaintiff does not object to the Magistrate Judge's findings on his statistical evidence, and the Court finds no plain error in them.

entity's business decisions."))).  The Court, upon *de novo* review, finds no error in this finding and recommendation of the Magistrate Judge.

Plaintiff's objections to the Magistrate's findings regarding the fairness of the investigation largely rehash his arguments opposing summary judgment.  (See Obj. at 2-6; Pl.'s Resp. at 14-16).  Plaintiff alleges "the investigation concerning the coffee comment was fatally flawed and amounted to pretext despite the R&R's observation to the contrary."  (Obj. at 2).  He argues, among other things, that there was a conflict of interest in Yancy having her subordinate, Matthews, conduct the investigation; that the investigation was unfair because of Yancy's lack of involvement; and that Matthews first stated that the Coffee Comment was offensive, and later testified that it merely "could" be perceived as offensive.  (Id. at 2-6).

These arguments are, at most, impermissible speculation.  Plaintiff does not offer any evidence that the City's decision to terminate him was based on discriminatory animus.  An employer "may terminate an employee for a good or bad reason without violating federal law."  Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).  Courts do not determine "whether employment decisions are prudent or fair," and instead determine "whether unlawful discriminatory animus motivates a challenged employment

25

decision." Id. at 1361.  The Court agrees with the Magistrate Judge that Plaintiff's case lacks any evidence that Matthews conducted his investigation differently than how he conducted similar investigations of alleged discrimination by employees of different races, and does not produce any evidence of racial bias.  (R&R at 30).

Plaintiff's argument that Matthews contradicted himself in testifying that the Coffee Comment merely "could" be perceived as offensive, also fails.  Plaintiff, a human resources director, admitted that he made the Coffee Comment in the presence of female African-American employees.  Whether the comment was sufficiently offensive to justify termination is the sort of second-guessing of business decisions prohibited by the Eleventh Circuit.  See Elrod, 939 F.2d at 1470.[8]  Plaintiff has failed to present *any* evidence suggesting that the City's decision to terminate him was motivated by his race.  Plaintiff has failed to show a mosaic of evidence of discrimination.

---

[8]    Using the McDonnell Douglas framework, a comment that "could" be perceived as offensive, in the context of the facts of this case, still meets the "exceedingly light" burden to show a non-discriminatory reason for termination. See Turnes, 36 F.3d at 1061 (quotations omitted).  Plaintiff's allegation of a contradiction in Matthews' characterization of the *level* of offensiveness of the comment fails to create a genuine issue of material fact as to whether the City's reason was a pretext for discrimination or to show a convincing mosaic of evidence of discrimination.

Plaintiff next argues that, although he revealed employee salary information without any formal legal request, salary information is not confidential and it is pretextual to rely upon the disclosure of it by Plaintiff as a ground for termination. The Magistrate Judge found that "the issue before the Court is not whether employee information should be deemed confidential.  It is sufficient that Defendants had a colorable basis to treat this disclosure as a violation."  (R&R at 28).

Plaintiff objects to this finding on the ground that the Georgia Open Records Act, O.C.G.A. § 50-18-70, *et seq.*, does not state that information becomes public information only when it is requested under the Open Records Act.  (Obj. at 9).  He argues also that salary information does not fall under the City's definition of Confidential Information.  (Id. at 10).  Plaintiff concludes that it is pretextual for an employer to terminate an employee for revealing confidential information when that information is not, in fact, confidential.  (Id.).

The Court agrees with the Magistrate Judge that Plaintiff did not present any evidence, "whether from any contrary treatment of a comparator or otherwise," that Defendants used this conduct, and disciplined Plaintiff based on it, on the basis of race.  (R&R at 28-29).  An employer may terminate an employee even for a bad reason without violating federal law.  See Damon, 196 F.3d at 1361.  While the

27

Georgia Open Records Act "has a procedure for requests and disclosure of information," this disclosure process does not support, as Plaintiff suggests, that individual HR employees can take it upon themselves to disclose information about other employees without a proper request.  (R&R at 28).  Plaintiff's disclosure of salary information suggests that the disclosure was a violation of Plaintiff's obligation to maintain this kind of internal personnel information as confidential.

Plaintiff disagrees with the wisdom of the City's decision to terminate him, but that disagreement is not a basis to avoid summary judgment.  In Smith, the Eleventh Circuit found a convincing mosaic where "there was substantial evidence of discriminatory racial animus, including documented racial tensions following a workplace shooting resulting from racism against black employees."  Clark v. South Broward Hosp. Dist., 601 F. App'x 886, 895 (11th Cir. 2015) (citation omitted).  There is absent here any evidence of racially-motivated animus in the decision made to terminate Plaintiff's employment.

Plaintiff's "evidence" is really only speculation and second-guessing of the City's business decision to terminate Plaintiff for his remarks about black women and his decision to disclose internal personnel information.  Plaintiff does not offer any comparator evidence to support a prima facie case of discrimination under the

28

McDonnell Douglas framework.  Even if Plaintiff could establish a prima facie case of race discrimination, Plaintiff's admissions of his statement about black women and his information disclosures provide persuasive evidence of Defendants' legitimate, non-discriminatory, non-pretextual reasons for terminating him.  See, e.g. Clark, 601 F. App'x at 896 (finding non-discriminatory, non-pretextual reason for termination where Plaintiff admitted that she might have teasingly referred to a Jewish colleague in a pejorative manner).  Even if Plaintiff was able to make out a prima facie case—which he cannot—Plaintiff cannot show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Combs, 106 F.3d at 1528.

Plaintiff also has not presented any evidence—let alone a convincing mosaic—suggesting that his termination was motivated by his race.  The Court here is required to grant Defendants' summary judgment motion on Plaintiff's Title VII claim.  The Court also must grant summary judgment on Plaintiff's Section 1981 and 1983 claims, because they are analyzed under the same framework as his Title VII claim.  See Rioux, 520 F.3d at 1275 n.5.

D.     Plaintiff's Age-Based Discrimination Claims

Plaintiff alleges that Defendants violated the ADEA by terminating his employment with the City based on his age.  (See Am. Compl. ¶¶ 53-55).  The Eleventh Circuit has held that the McDonnell Douglas framework is applicable to analyzing claims of age discrimination under the ADEA.  See Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1556 (11th Cir. 1995).

The Magistrate Judge found that, while Defendants concede that Plaintiff has established a prima facie case of age discrimination, "Plaintiff has not presented evidence to cast doubt on the propriety of these reasons."  (R&R at 35). The Magistrate Judge concluded that Plaintiff failed to show that Defendants' proffered reasons were a pretext for discrimination, and Plaintiff's ADEA claims therefore fail.  (Id.).  Plaintiff does not object to these findings and recommendation, and the Court finds no plain error in them.  Accordingly, the Court is required to grant summary judgment on Plaintiff's ADEA claims.[9]

---

[9]     Defendants Yancy and Matthews also argue that they are entitled to qualified immunity, which protects government officials acting within the scope of their discretionary authority "from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotations and citations omitted).  The Magistrate Judge found that, even if Plaintiff had set forth triable claims of race discrimination, Yancy and Matthews are entitled to qualified immunity because Plaintiff cannot show that they violated his constitutional rights,

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Justin S. Anand's Final Report and Recommendation [55] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [43] is **GRANTED**.

**SO ORDERED** this 29th day of September 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

and therefore cannot meet the higher burden of demonstrating that they violated any "clearly established statutory or constitutional rights of which a reasonable person would have known."  (R&R at 36 (citing Pearson, 555 U.S. at 231)). Plaintiff does not object to these findings and recommendation, and the Court finds no plain error in them.

31